IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRAD JENNINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-3261-CV-C-WJE |
| | ) | |
| DANIEL F. NASH, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant Daniel F. Nash's notice of intent to object to certain testimony from Plaintiff Brad Jennings' expert witness, Stan Smith, Ph.D. (Doc. 208). Plaintiff has filed a response. (Doc. 212). Dr. Smith seeks to testify as to the amount and type of damages suffered by Plaintiff, including the loss of wages and employment benefits; cost of future life care; and reduction in value of life or loss of enjoyment (also known as "hedonic damages"). (Doc. 208-1, p. 1). Defendant has only objected to Dr. Smith's testimony regarding hedonic damages. Defendant's objection will be sustained as set forth herein.[1]

### I. Legal Standard

To determine the admissibility of expert testimony, the Court must apply the criteria outlined in Federal Rule of Evidence 702 and the test set forth by the Supreme Court of the United States in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* reiterates the point stating, "the trial judge must determine . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or

---

[1] Plaintiff argues Defendant's notice to object to Dr. Smith's testimony in essence amounts to a *Daubert* motion. Plaintiff further notes the deadline for such motions passed on October 15, 2019. (Doc. 103). However, the Court exercises its discretion and declines to overrule Defendant's objection as untimely on the instant issue.

methodology underlying the testimony is scientifically valid and . . . properly can be applied to the facts in issue." 509 U.S. at 592-93. Under *Daubert,* "scientific knowledge" requires more than speculation and subjective belief; it implies validity, reliability, and relevance. *See id.*; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999) ("Rules 702 and 703 grant all expert witnesses, not just 'scientific' ones, testimonial latitude unavailable to other witnesses on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.").

Generally, expert testimony should be liberally admitted and its credibility tested through the adversarial process rather than excluded initially. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citing *U.S. v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001); *Archer Daniels Midland Co. v. Aon Risk Servs.*, 356 F.3d 850, 858 (8th Cir. 2004). "[T]he rejection of expert testimony is the exception rather than the rule." *Robinson*, 447 F.3d at 1100. If the expert's opinion is "so fundamentally unsupported that it can offer no assistance to the jury," however, it can properly be excluded. *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988).

The question of whether expert testimony qualifies as scientific knowledge useful to the fact-finders is left to the discretion of the trial judge. *See Daubert*, 509 U.S. at 589; *see also Bradshaw v. FFE Transp. Servs., Inc.*, 715 F.3d 1104, 1107 (8th Cir. 2013). In fulfilling the "gatekeeper" role, the Court considers many factors to determine the reliability and relevance of expert testimony:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citing *Daubert*, 509 U.S. at 593-94). This "reliability and relevancy test" is employed primarily to prevent "dubious scientific testimony" from swaying the jury. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

In fields where data, principles, methods, etc. are uncertain, the question becomes whether the expert has "a reliable basis in the knowledge and experience of [the relevant] discipline."

*Kumho Tire Co.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). If the information used in reaching a certain conclusion is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," the testimony may be admissible even if it contains otherwise inadmissible hearsay evidence. Fed. R. Evid. 703; *Arkwright Mutual Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997). At a minimum, the proponent of the expert testimony must prove the testimony rests on a sound foundation and is characterized by a "level of intellectual rigor" accepted in the profession. *Kumho Tire Co.*, 526 U.S. at 152.

## II. Analysis

Dr. Smith's testimony on hedonic damages, including the reduction in value of life or loss of enjoyment of life, must be excluded. Dr. Smith attempts to estimate hedonic damages using a "willingness to pay" method that evaluates economic indicators to approximate the "value of life and the reduction in value of a life resulting from an injury." *Families Advocate, LLC v. Sanford Clinic N.*, No. 3:16-CV-114, 2019 WL 1548911, at *1 (D.N.D. Feb. 11, 2019) (internal marks omitted); (Doc. 208-1, pp. 8-9). Specifically, Dr. Smith analyzes three categories of studies—consumer behavior and purchases of safety devices, occupational wage risk premiums, and cost-benefit analyses of regulations—to estimate an average value of life. (Doc. 208-1, pp. 8-9). He then determines how much an injury reduced a plaintiff's value of life. *Id.* Defendant's objection centers primarily on issues with Dr. Smith's underlying methodology for his opinions on hedonic damages. In response, Plaintiff argues that Defendant did not conduct a *Daubert* analysis in its filing. Plaintiff further contends Dr. Smith's testimony meets the requirements of *Daubert*.[2]

Here, Plaintiff has failed to show how Dr. Smith's testimony on hedonic damages would be necessary or reliable under the standard set forth in *Daubert* to assist the trier of fact to understand or determine a fact in issue. The Court shares many of the concerns outlined by other courts, including issues with the methodology behind Dr. Smith's "willingness to pay" model. *Cramer v. Equifax Info. Servs.*, No. 4:18-CV-1078 CAS, 2019 WL 4468945, at *6 (E.D. Mo. Sept. 18, 2019).[3] The Court believes the speculative inferential leap between Dr. Smith's examination

---

[2] Plaintiff notes the Court previously allowed Dr. Smith to testify in another case regarding a different plaintiff's impairment to wages and benefits. However, currently at issue before the Court is Dr. Smith's testimony and underlying methodology specifically related to hedonic damages.

[3] The Court in *Cramer* succinctly outlined many such concerns by way of string cite:
> See *Saia v. Sears Roebuck & Co.*, 47 F. Supp. 2d 141, 149 (D. Mass. 1999) (expert testimony on hedonic damages, purporting to calculate injured plaintiff's loss of enjoyment of life based on "willingness to pay" model which considered consumer behavior, wage risk premiums, and regulatory cost-benefit analysis, was unreliable whether evaluated as scientific or as "technical or

of various types of studies and ultimate hedonic damages calculation undercuts the reliability of such testimony.

For example, consumer behavior and the purchasing of safety devices "is probably influenced as much by advertising and marketing decisions made by profit-seeking manufacturers and by government-mandated safety requirements as it is by any consideration by consumers of how much life is worth." *Families Advocate*, 2019 WL 1548911, at *7 (quoting *Mercado v. Ahmed*, 974 F.2d 863, 871 (7th Cir. 1992)). Similarly, regarding occupational risk premiums, "[a]nyone who is familiar with the wages of coal miners, policemen, and firefighters would scoff at the assertion that these high[-]risk jobs have any meaningful extra wage component for the risks undertaken by workers in those professions." *Families Advocate*, 2019 WL 1548911, at *7 (quoting *Smith v. Jenkins*, 732 F.3d 51, 67 (1st Cir. 2013)). Lastly, "the cost of government health and safety regulations per life saved may suggest a collective policy judgment the government has made, or may represent a policy selected for reasons other than the cost-benefit analysis 'hedonic analysis' implies, or even a mistaken policy." *Families Advocate*, 2019 WL 1548911, at *8 (quoting *Jenkins*, 732 F.3d at 67).

Indeed, numerous circuit and district courts have excluded Dr. Smith's testimony on hedonic damages that were based on his "willingness to pay" model. While the Eighth Circuit has not yet opined, at least two in-circuit district courts, ten out-of-circuit district courts, and three other circuits courts "concluded Dr. Smith's testimony on the value of loss of enjoyment of life was inadmissible." *Families Advocate*, 2019 WL 1548911, at *7 (citing *Jenkins*, 732 F.3d at 65-67 (compiling numerous district court opinions from across the country that excluded such testimony from Dr. Smith); *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244–46 (10th Cir. 2000) (compiling similar cases and finding no abuse of discretion when a district court allowed Dr. Smith to define hedonic damages to a jury but not apply the facts of the case to his definition); *Mercado v. Ahmed*, 974 F.2d 863, 868–71 (7th Cir. 1992) (barring Dr. Smith's testimony on a plaintiff's

---

other specialized" knowledge) (citing to various federal courts rejecting expert testimony on hedonic damages, in particular Dr. Smith's); *see also Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 734 (D. Md. 2013) ("The court is not convinced that an expert whose opinion is based almost entirely on asking laypersons how a particular event has affected their enjoyment of life would provide any assistance to the jury in making that determination for themselves."); *Kurncz v. Honda N. Am., Inc.*, 166 F.R.D. 386, 388 (W.D. Mich. 1996) ("The willingness to pay model on the issue of calculating hedonic damages is a troubled science in the courtroom, with the vast majority of published opinions rejecting the evidence.").
2019 WL 4468945, at *6.

lost pleasure of living due in large part to concerns regarding his methodology); *see Cramer* 2019 WL 4468945, at *6. Dr. Smith's testimony on hedonic damages must therefore be barred.

### III. Conclusion

Defendant's objection to exclude the testimony of Stan Smith, Ph.D., is SUSTAINED as set forth herein.  Dr. Smith is barred from testifying on hedonic damages as discussed above.

IT IS THEREFORE ORDERED.

Dated this 17th day of February, 2020, at Springfield, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
United States Magistrate Judge